The opinion of the Court was delivered by
Glover, J.
The questions sent up to this Court by the Law Court of Appeals, are:
1. Is the Act incorporating the Bank of Newberry, South Carolina, a public Act ?
2. If it be a private Act, is it necessary that it should be set forth in the pleadings, or, does the general issue admit the corporate existence of the plaintiff, and dispense with proof by means of an examined copy ?
1. The distinction between a public and a private Act does not depend upon the clause, which is often inserted, directing that it shall be deemed and taken as a public Act. We must look to the objects and purposes contemplated, and the scope and general provisions of the Act, to ascertain its character. Private statutes operate upon private persons and private concerns. (1 Bl. Com. 86.) A statute relating to trade in general is a public statute; but if it concern a particular trade merely, or an individual of that trade, it is private. (4 Rep. 76, Holland's case.) Numerous instances may be cited to mark the distinction where the Legislature has failed to do so expressly.
Respecting Acts of incorporation, a rule of general application, defining their character, may be furnished if we look to the intent and inquire, how far a corporation, in the exercise of the franchises granted by its charter, affects the community: whether its provisions embrace only private interests, or, whether the State or people at large are concerned in the *497 exercise of its corporate privileges. Holt, O. J., held, that even a private Act of Parliament, in print, that covered, and, therefore, concerned the whole county, as the Act of Bedford Levels, may be given in evidence without comparing it with the record. (Gilb. Ev. 10-18.)
The Bank of Newberry was incorporated with seven other banks in 1852. (12 Stat. 212.) The Act provides, “That said banks shall have and possess the same rights and privileges, and be subject to the same duties, liabilities, obligations, regulations and restrictions herein provided for the Planters’ and Mechanics’ Bank, and Union Bank and Commercial Bank.” No clause was added declaring it to be a public Act; but the VI. Sec. directs, that the bills or notes of the said banks shall be received by the treasurers, tax-collectors, and other public officers, in payment for taxes and other moneys due to the State. The bills of this bank are thereby made a legal tender in the payment of the public dues, and a currency is given to them as extended as the limits of the State. It is an indorsement by the General Assembly, creating public confidence in, and securing a general circulation for its bills. The interest of the stockholders is not alone affected by extending the circulation of its notes and increasing its dividends; but every citizen is concerned in the solvency of the corporation. Its bills constitute, annually, a part of the public revenue, and are paid by the treasurers in discharge of appropriations made by the Legislature. This feature of the charter impresses itself on the whole community, and stamps a public character on the Act of incorporation. (Bac. Ab., Statute F.)
Many decisions in this country, involving the same question, sustain these views. In Roger's case, (2 Green. R. 308,) the defendant was indicted for having forged and counterfeited bills purporting to be issued by the late Bank of the U. S., and a printed copy of the Act of Congress was admitted in evidence, on the ground, that the bank was established for public purposes as an important aid in conducting the fiscal *498 concerns of the government, which owned a large portion of its funds, and that its bills were received in payment of the revenue.
In the case of the Bank of Utica vs. Smeeds, (3 Cow. R. 684,) the inclination of the Court is to regard all Acts public which incorporate banks, without reference to their connexion with the revenue. The Chancellor says, “ I am not prepared to admit that a law incorporating a bank, is a private Act, which must be recited in every suit against a corporation. These institutions are public in their character, and their operations affect the whole community.” O. J. Marshall, in Young vs. The Bank of Alexandria, (4 Cranch, 388,) intimates strongly an opinion, that the Act of the Legislature of Virginia, incorporating the bank, is a public Act; “ And that if it were not, it being printed by the public printer, by order of the Legislature, agreeably to a general Act of the Legislature for that purpose, it must be considered as sufficiently authenticated.”
Not only statutes that concern the revenue .are public, but other criteria may be adopted to indicate their character. It has been held, that private Acts recognized by public Acts, will be noticed without pleading. (Samuel vs. Evans, 2 T. R. 569; Saxby vs. Kirkus, Bul. N. P. 224.) The Act of 1840, (11 Stat. 100,) imposing penalties on banks for the suspension of specie payments,' and for the neglect to make monthly returns, (which in the opinion of a majority of this'Court is a public Act,) by its express terms became a part of the Act of 1852, incorporating the Bank of Newberry, and, consequently, makes the latter a public Act.
But conceding that the Act of 1840, is a private Act, it must be admitted that its provisions became a part of the charter, granted to the stockholders of the Bank of Newberry and made them liable to a forfeiture. The Act provides, “ that every bank which shall suspend or refuse the payment of its *499 notes in current coin, shall become liable to pay to the State, at the expiration of every month after such suspension, a sum of money at the rate of five per cent, per annum upon the whole amount of its notes which shall have been issued in circulation at the commencement of said month.” Every bank is also required to make monthly returns to the Comptroller General, and for neglect of this duty to forfeit, for the use of the State, one hundred dollars for each and every day’s neglect; and the 1st section declares, “ that the provisions of this Act shall be and become parts of the charters of every bank already incorporated within this State, which shall accept the same; and also of every bank which shall, at the present or any succeeding session of the General Assembly, receive a grant of a charter.”
For the suspension of specie payments or neglect to make monthly returns, the plaintiff is, therefore, liable to the penalties provided by the Act; and on the authority of the case of Rex vs. Baggs, (Skin. 429,) it has frequently been decided, that if a statute, containing provisions which are of a private nature, also contains provisions for the forfeiture of penalties to the State, it is a public Act.
The public interests affected by the exercise of the privileges granted to the plaintiff: the incorporation of the provisions of a public Act with the Act establishing the Bank of Newberry, and the liability of the corporators to a forfeiture, are reasons which, in the opinion of a majority of this Court, sustain the conclusion, that this is a public Act which the Court is bound ex officio to take notice of, and that it was not necessary to set it forth in the pleadings.
This result renders it unnecessary to consider the other question. Some members of the Court are of opinion that private Acts must be set forth in the pleadings, and must be proved at the trial by an examined copy; while other members of the Court hold, that in actions by corporations the plea of *500 the general issue admits the character in which the plaintiff sues and dispenses with proof at the trial.
It is ordered, that the nonsuit be set aside.
Motion granted.
Johnstón, Dunkin, Dargan and Wardbaw, CC., and Withers, J., concurred.
O’Neall, Wardlaw and Whitner, JJ., did not hear the argument.

Motion granted.